IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:24-cv-000407

| | |
|---|---|
| DIANA AMERSON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | **COMPLAINT** |
| ) | **JURY TRIAL DEMANDED** |
| FAYETTEVILLE STATE UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

COMES NOW Plaintiff Diana Amerson ("Ms. Amerson"), complaining of Defendant Fayetteville State University ("Defendant"), alleges and says the following:

## INTRODUCTION

1. This action stems from Defendant's unlawful treatment of Ms. Amerson, an employee in the Defendant's library, which was done in retaliation for her reports of racial discrimination in the workplace by her white supervisor, Larry Treadwell ("Treadwell").

2. Each paragraph of this Complaint incorporates all others, and all exhibits are incorporated as if fully laid out herein.

## JURISDICTION

3. Ms. Amerson's claims arise under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"), N.C. Gen. Stat. § 126-85 (the "North Carolina Whistleblower Act"), and North Carolina common law.

4. Jurisdiction and venue are proper pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. § 1343.

1

5. A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of North Carolina.

6. Costs and attorney's fees may be awarded pursuant to Title VII, the North Carolina Whistleblower Act, and Fed. R. Civ. P. 54.

7. This Court should assume supplemental jurisdiction of Ms. Amerson's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims are based upon the same operative facts as the Title VII claim over which this Court has jurisdiction. Judicial economy, convenience, and fairness to the parties suggest that this Court assume and exercise jurisdiction over the claims alleged herein.

## PARTIES

8. Ms. Amerson is a citizen of the United States and a resident of Fayetteville, North Carolina.

9. Until May 3, 2023, Ms. Amerson had been employed by Defendant for more than 33 years in the Defendant's Charles W. Chesnutt Library.

10. At the time she was fired, Ms. Amerson served as Defendant's Bibliographic Instruction and Distant Education Librarian.

11. Defendant is a component of the University of North Carolina, a state institution and government body, established pursuant to the laws of the State of North Carolina.

12. At all times relevant to this Complaint, Ms. Amerson was an "employee" as that term is defined by Title VII and the North Carolina Whistleblower Act.

13. At all times relevant to this Complaint, Defendant was an "employer" as the term is defined in Title VII.

2

## ADMINISTRATIVE HISTORY

14. On or about May 15, 2023, Ms. Amerson filed a timely charge of discrimination (Charge No. 433-2023-01261) with the Equal Employment Opportunity Commission ("EEOC"). A copy of the May 15, 2023 Charge of Discrimination is attached hereto as Exhibit A.

15. The EEOC issued a "Dismissal and Notice of Rights" on April 19, 2024. A copy of the April 19th Dismissal and Notice of Rights letter is attached hereto as Exhibit B.

16. This Complaint is being filed within 90 days from the date Ms. Amerson received the Dismissal and Notice of Rights from the EEOC.

17. Ms. Amerson has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

## FACTS

18. On or about October 10, 2021, Ms. Amerson sent Treadwell an email regarding concerns that she had regarding the hostile work environment created in the school library by Jinong Sun, the library's Head of Acquisitions Librarian.

19. Specifically, Ms. Amerson cited Ms. Sun's creation of "a hostile work environment, being unfair, [and] bullying and microaggressions against me."

20. Treadwell did nothing to remedy Ms. Sun's offending behavior towards Ms. Amerson.

21. On or about January 7, 2022, Defendant fired Douglas Ballard, an African American man who served as the school library's Digital Initiatives Librarian.

22. Mr. Ballard's firing was done at Treadwell's direction.

23. Ms. Amerson believed that Treadwell's firing of Mr. Ballard was because of Mr. Ballard's race.

24. On or about February 12, 2022, Ms. Amerson filed a complaint with Defendant's Human Resources regarding Treadwell's leadership.

25. In that complaint, Ms. Amerson called Sun "a bully" and stated that "Treadwell lets her get away with it."

26. Ms. Amerson went on to state that she believed "Treadwell wants to get rid of people based on age and race."

27. In making that statement, Ms. Amerson was referring to Mr. Ballard, as well as other African Americans under Treadwell's supervision.

28. Following Ms. Amerson's report, Treadwell retaliated against Ms. Amerson by denying her a promotion to become the library's Head of Public Services.

29. Ms. Amerson, who had previously interviewed for Treadwell's position, was told by Treadwell that she did not qualify for the Head of Public Services position, a role that was under Treadwell's position on the organizational chart.

30. On March 10, 2022, Ms. Amerson submitted a complaint to Defendant's Human Resources citing Treadwell's failure to promote her. Specifically, Ms. Amerson reported that she was "being discriminated against."

31. In August 2022, Defendant hired Jessica Cerri, a white woman, to serve as the library's Head of Public Services, the same position that Ms. Amerson applied for.

32. Following the hiring of Ms. Cerri, Ms. Amerson's co-workers began hearing both Ms. Cerri and Treadwell call Ms. Amerson "difficult" and described her as a member of a group of "troublemakers."

33. Specifically, Ms. Amerson's direct supervisor, Tiffany Torres, heard Ms. Cerri and Treadwell complain that Ms. Amerson was "always going across the street."

34. Going "across the street" meant going to Defendant's Human Resources because that department was across the street from the library.

35. Treadwell repeatedly told Ms. Torres that the "drama" within the library would disappear after the "troublemakers" were gone.

36. Treadwell was referring to more than just Ms. Amerson when discussing "troublemakers" in the library.

37. In fact, on September 9, 2022, the Defendant's Provost, Dr. Monica Leach, held a meeting with the library staff regarding complaints she had received from various staff members about Treadwell's discriminatory conduct.

38. Dr. Leach rejected the staff's concerns saying that she "fully support[ed] what he is doing" and telling them that "there are other places of employment that [are] hiring – so no one has a gun to anyone's head or anything like that for you to stay here…"

39. Dr. Leach ordered the library staff to not "be so divisive immediately" and to avoid being "so punitive and so negative."

40. Empowered by Dr. Leach's public vote of confidence, Treadwell and Cerri continued their campaign of retaliation against Ms. Amerson.

41. In December 2022, Cerri posted an insensitive and unprofessional post on Facebook about Ms. Amerson and one of her co-workers, Tammiika Frowner.

42. In response to this, Ms. Amerson and Ms. Frowner both filed complaints against Cerri to Defendant's Human Resources regarding Cerri's Facebook post and the hostile work environment she had created against both women.

43. Defendant's Human Resources convened a panel led by Debbie Disbrow, a white woman, to investigate Ms. Amerson and Ms. Frowner's complaints against Cerri.

44. Disbrow's investigation returned no findings despite the widely recognized racial tensions among the library staff.

45. Again encouraged by Defendant's refusal to hold them accountable, Treadwell and Cerri escalated their campaign of retaliation against Ms. Amerson.

46. In particular, Treadwell hired Laura Mehaffey, a white woman, to work as Digital Initiative Librarian for Defendant. Treadwell proceeded to remove many of Ms. Amerson's duties and responsibilities and transfer them to Mehaffey.

47. On February 1, 2023, Treadwell removed more duties from Ms. Amerson and awarded them to Cerri.

48. Treadwell's decision to remove these work responsibilities from Ms. Amerson led to her inability to meet the performance goals Defendant had set for her.

49. Treadwell fired Ms. Amerson on May 3, 2023.

50. Treadwell's decision to fire Ms. Amerson was done in retaliation for her complaints to Defendant's Human Resources and leadership.

51. In deciding to fire Ms. Amerson, Treadwell did not consult with her direct supervisor, Ms. Torres.

52. Ms. Torres believes that Treadwell's decision to fire Ms. Amerson was in retaliation for Ms. Amerson's protected activities on behalf of the library staff.

53. Ms. Torres further believes that the quality of Ms. Amerson's work was exemplary and that Ms. Amerson was an "asset" to the library.

## COUNT I – RETALIATION

54. Ms. Amerson hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

55. Title VII and the ADEA prohibit retaliation against employees who oppose discrimination prohibited by the statutes.

56. Ms. Amerson engaged in protected activity within the meaning of Title VII and the ADEA by reporting Treadwell's discriminatory conduct against African American and older employees under his supervision.

57. At the time of her reports, Ms. Amerson was meeting all of her job expectations.

58. Ms. Amerson was punished and, ultimately terminated, from her position with Defendant in retaliation for her protected activity.

59. The individual responsible for Defendant's retaliatory action knew of Ms. Amerson's protected activity at the time of the retaliation.

60. As a direct and proximate result of Defendant's retaliation, Ms. Amerson suffered and continues to suffer economic losses, pain and suffering, and other nonpecuniary losses.

61. Ms. Amerson has incurred and continues to incur lost wages, loss of earning capacity, and other damages in an amount to be proven at trial.

62. Ms. Amerson is entitled to recover her reasonable attorney's fees and costs.

## COUNT II – VIOLATION OF NC WHISTLEBLOWER ACT

63. Ms. Amerson hereby realleges and reincorporates by reference the foregoing paragraphs as if fully set forth herein.

64. N.C. Gen. Stat. § 126-84 provides that it is the public policy of this state that state employees shall be encouraged to report verbally or in writing to their supervisor, department head, or other appropriate authority, evidence of activity by a state agency or state employee constituting "a violation of state … law, rule, or regulation."

65. N.C. Gen. Stat. § 126-85 provides that no head of any state department, agency or institution or other State employee exercising supervisory authority shall discharge, threaten or otherwise discriminate against a state employee regarding the state employee's compensation, terms, conditions, location or privileges of employment because the state employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, any activity described in N.C. Gen. Stat. § 126-84, unless the state employee knows or has reason to believe that the report is inaccurate.

66. N.C. Gen. Stat. § 126-85 provides that no state employee shall retaliate against another state employee because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, any activity described in N.C. Gen. Stat. § 126-84.

67. Defendant is a state institution for the purposes of the North Carolina Whistleblower Act.

68. Treadwell, at all relevant times, was a state employee exercising supervisory authority for purposes of the North Carolina Whistleblower Act.

69. Ms. Amerson's reports to Defendant regarding Treadwell's discriminatory conduct were protected under the North Carolina Whistleblower Act.

70. Treadwell retaliated against Ms. Amerson because of Ms. Amerson's protected activity

71. Treadwell's actions, which are attributed to Defendant, constitute a willful violation of the North Carolina Whistleblower Act.

72. As a direct and proximate result of Defendant's conduct, Ms. Amerson suffered and continues to suffer economic losses, pain and suffering, and other nonpecuniary losses.

73. Ms. Amerson has incurred and continues to incur lost wages, loss of earning capacity, and other damages in an amount to be proven at trial.

74. The North Carolina Whistleblower Act entitles Ms. Amerson to treble damages plus costs and reasonable attorney's fees for Defendant's violations of the law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby requests the following relief:

1. Injunctive relief for reinstatement into a substantially similar position within Fayetteville State University and to enjoin Defendant from future acts in violation of Plaintiff's rights;
2. Plaintiff has and recovers from Defendant for all economic damages in an amount to be proved at trial;
3. Plaintiff has and recovers from Defendant for all non-economic damages in an amount to be proved at trial;
4. Plaintiff has and recovers from Defendant for treble damages in an amount to be determined by the jury;
5. All costs, interest, and expenses, including reasonable attorney's fees, be taxed to the Defendant;
6. All issues of fact herein be tried by a jury;
7. Recovery for pre-judgment and post-judgment interest on all amounts awarded herein; and
8. All other relief which this Court deems just and proper.

This the 14th day of July, 2024.

OSBORN GAMBALE BECKLEY & BUDD PLLC

BY: _____
JOSEPH D. BUDD
N.C. Bar No. 44263
1100 Wake Forest Rd., Suite 205
Raleigh, North Carolina 27604
joe@counselcarolina.com
919.373.6422
Facsimile: 919.578.3733
